[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-13184
Non-Argument Calendar
_____

Agency No. A087-504-490

STANLEY SIERRA GRANADOS,
MARGOTH MARTIZA MARTINEZ CABALLERO,
HEINER STEVEN SIERRA MARTINEZ,
BRYAN FARID SIERRA MARTINEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(August 22, 2014)

Before TJOFLAT, JORDAN, and FAY, Circuit Judges.

PER CURIAM:

Stanley Sierra Granados, a native and citizen of Colombia, seeks review of the final order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of asylum, withholding of removal, and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). We deny the petition for review in part and dismiss in part.

## I. BACKGROUND

A. Factual Background

Sierra Granados joined the Colombian army in 1988 and became an intelligence officer after six years. His duties involved obtaining information about terrorist groups in Colombia, including the Revolutionary Armed Forces of Colombia ("FARC"). During one of his operations, Sierra Granados obtained incriminating information about one of FARC's financial leaders, Robinson de la Cruz Obregon Sanguino. Although it was not part of his duties, Sierra Granados presented a complaint to the Colombian Attorney General against Sanguino, because he recognized this was an opportunity to inflict an ideological blow to FARC. Sierra Granados's complaint and testimony contributed to the capture of Sanguino in 2004. Sanguino later was released, but Sierra Granados also testified in 2007, and Sanguino again was incarcerated.

2

In 2008, FARC began threatening Sierra Granados and ordering him not to testify against Sanguino at trial. He received several threatening telephone calls warning him that if he were to testify, FARC "would make attempts against [him] or his family." ROA at 36. In January 2009, the Colombian military also intercepted a radio communication in which FARC revealed plans to attack Sierra Granados. Upon learning about the radio communication, Sierra Granados immediately withdrew from the Colombian army. Following his withdrawal, he received a letter threatening to attack him and his family. Sierra Granados left home with his family, went into hiding, and then moved to his wife's parents' home. Shortly thereafter, Sierra Granados fled to the United States with his family. Sierra Granados, his wife, and their two sons entered the United States on May 12, 2009, as non-immigrant visitors for pleasure with authorization to remain until November 11, 2009.

B. Procedural Background

In July 2009, Sierra Granados filed an application for asylum pursuant to the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), and withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and alleged he would be subject to persecution based on political opinion if he returned to Colombia.[1] On July 14, 2010, the Department of Homeland Security ("DHS")

_____

[1] Sierra Granados, the lead petitioner, filed an asylum application that included as

3

issued Notices to Appear to Sierra Granados and his family and charged them as removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as non-immigrants, who had remained in the United States for a longer time than permitted.

At a master calendar hearing, Sierra Granados conceded removability and expressed his intent to pursue his July 2009 application for asylum and withholding of removal. The IJ conducted a merits hearing on the asylum claim, and Sierra Granados testified to the facts described above. He argued he had a well-founded fear FARC would persecute him based on (1) imputed political opinion, and (2) membership in a particular social group. Sierra Granados argued FARC had imputed an anti-FARC political opinion to him, when he chose to file a complaint against Sanguino. Sierra Granados also asserted he feared persecution based on his membership in a particular social group of former members of the military, who had testified as civilians in the successful investigation and prosecution of illegal armed groups. Sierra Granados conceded FARC's threats did not rise to the level of past persecution.

The IJ denied Sierra Granados's application for asylum, withholding of removal, and CAT relief. The IJ found Sierra Granados's testimony credible but

derivative beneficiaries his wife, Margoth Martiza Martinez Caballero, and their two sons, Heiner Steven Sierra Martinez and Bryan Farid Sierra Martinez. References in this opinion to Sierra Granados's claims or arguments encompass his family's synonymous claims and arguments.

noted Sierra Granados's application would be denied.  The IJ found the threatening telephone calls, letter, and radio communication, separately or cumulatively, were not past persecution; therefore, Sierra Granados did not have a well-founded fear of persecution because of any protected basis.  Since there was no showing FARC was aware of Sierra Granados's political opinion or that Sierra Granados had ever expressed a political opinion, the IJ concluded there was no evidence Sierra Granados had been or would be persecuted, because of his political opinion.

The IJ further found Sierra Granados had not been persecuted for his membership in a particular social group, since protected social groups did not include former police or military officers who were singled out for their roles in disrupting particular criminal activity.  The IJ recognized individuals, who engaged in risks similar to those of the police or the military, regardless of motive, did not receive protection as a particular social group.  The IJ also determined Sierra Granados's fear of persecution was not objectively reasonable.  Because Sierra Granados had not met his burden for asylum, the IJ concluded he necessarily failed to meet the higher burden for withholding of removal.  Additionally, Sierra Granados had not presented any evidence to support relief under CAT.  The IJ denied Sierra Granados's application and ordered removal to Colombia on the charge contained in the Notice to Appear.

Sierra Granados appealed to the BIA, which dismissed his appeal.  It held Sierra Granados had failed to meet his burden of proof for asylum, because he had (1) conceded before the IJ that he had not suffered past persecution, and (2) failed to demonstrate a nexus between his fear of persecution and an actual or imputed protected ground.  The BIA determined no evidence demonstrated FARC was aware of Sierra Granados's political motivation or political opinion.  FARC had threatened Sierra Granados in retaliation for his refusal to comply with their warnings and for testifying against a leader of the group.  The BIA acknowledged Sierra Granados voluntarily had decided to file a complaint against Sanguino as a civilian based on knowledge that he had obtained as an army intelligence officer. It held, however, Sierra Granados essentially had acted as a noncriminal informant for the government, and noncriminal informants are not a particular social group under the INA.  The BIA affirmed the IJ's determination that Sierra Granados had failed to establish his fear was objectively reasonable, because FARC had not harmed or threatened Sierra Granados's parents, who remained in Colombia, nor had it damaged or harmed Sierra Granados's home, while he had been in the United States.

On appeal, Sierra Granados challenges the BIA's determination that he was not entitled to asylum based on a well-founded fear of future persecution, because

6

of an imputed political opinion or membership in a particular social group.[2]  For the first time, he also argues the threats he received from FARC amount to past persecution.

## II. DISCUSSION

When the BIA issues a decision, our review is limited to that decision, unless the BIA expressly adopts the IJ's decision.  *Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  When the BIA adopts the IJ's reasoning, we review the decisions of both the IJ and the BIA.  *Id.*  Because the BIA agreed with the IJ's findings, and made additional observations, we review both decisions.  *See id.*

We review the BIA and IJ's legal determinations de novo and their factual determinations under the substantial-evidence test.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  We lack jurisdiction to consider a claim raised in a petition for review, unless the petitioner has exhausted that claim before the BIA.  8 U.S.C. § 1252(d)(1); *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam).

The Attorney General or Secretary of DHS has discretion to grant asylum if an alien meets the INA's definition of a "refugee."  INA § 208(b)(1), 8 U.S.C. § 1158(b)(1).  A "refugee" is:

---

[2] Because Sierra Granados does not challenge the denial of his applications for withholding of removal and CAT relief, he has abandoned those issues.  *See Imelda v. U.S. Att'y Gen.*, 611 F.3d 724, 727 (11th Cir. 2010) (recognizing a petitioner abandons claims not raised in his appellate brief).

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).  The asylum applicant carries the burden of proving statutory "refugee" status.  8 C.F.R. § 208.13(a); *Najjar*, 257 F.3d at 1284.  To show eligibility with specific and credible evidence, an alien must establish (1) past persecution because of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b).

A. Past Persecution

Sierra Granados argues FARC's verbal and written threats constituted past persecution.  Sierra Granados conceded before the IJ that he had not suffered past persecution, and he did not provide any argument regarding past persecution in his appeal to the BIA.  Because Sierra Granados failed to exhaust his claim of past persecution before the BIA, we lack jurisdiction for this claim and dismiss that part of the petition.  INA § 242(d)(1), 8 U.S.C. § 1252(d)(1); *Amaya-Artunduaga*, 463 F.3d at 1250-51 (recognizing we lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted that claim before the BIA).

8

B. Well-Founded Fear of Future Persecution

Sierra Granados argues he has a well-founded fear of persecution because of imputed political opinion and membership in a particular group.  A well-founded fear of future persecution must be both subjectively genuine and objectively reasonable.  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006) (per curiam).  To establish eligibility for asylum based on a petitioner's fear of future persecution for a political opinion, a petitioner must prove "he has a well-founded fear that his political opinion will cause him to be persecuted."  *Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1331 (11th Cir. 2011) (per curiam) (citation and internal quotation marks omitted).  Refugee status can be shown by an imputed political opinion, whether correctly or incorrectly attributed to the petitioner.  *Id.*

The BIA has held a "particular social group" refers to persons who "share a common, immutable characteristic . . . such as sex, color, or kinship ties, or in some circumstances . . . a shared past experience such as former military leadership or land ownership."  *Matter of Acosta*, 19 I. & N. Dec. 211, 233-34 (BIA 1985), *overruled on other grounds by Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987); *see also Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1196-97 (11th Cir. 2006) (holding BIA's definition reasonable).  Furthermore, the group must have sufficient "social visibility" and should not be defined so broadly

9

that it becomes "a catch-all for all groups who might claim persecution." *Castillo-Arias*, 446 F.3d at 1194, 1197.

Sierra Granados claims a well-founded fear of persecution based on imputed political opinion, but substantial evidence supports the IJ and the BIA's determination that FARC has not imputed a political opinion to him. The record indicates FARC actually threatened Sierra Granados in retaliation for his role in the capture of Sanguino and to prevent him from testifying against Sanguino in the future, not because FARC attributed any political beliefs to him. Sierra Granados has failed to demonstrate he has a well-founded fear that an imputed political opinion will cause him to be persecuted. *Carrizo*, 652 F.3d at 1331 (recognizing a petitioner has the burden to prove an imputed political opinion will cause him to be persecuted).

Sierra Granados argues he belongs to a particular social group consisting of former military members who have testified as civilians in the successful investigation and prosecution of illegal armed groups. Former military members, who have testified as civilians against FARC undeniably share immutable characteristics, in that their prior testimony and status as former military members are historical facts that cannot be undone. *See Acosta*, 19 I. & N. Dec. at 233-34. There is no evidence in the record that the proposed social group is highly visible and recognizable by Colombian society, and Sierra Granados testified that criminal

10

proceedings before the Attorney General are private. *Castillo-Arias*, 446 F.3d at 1196-98 (recognizing those who stay anonymous are not visible enough to be considered a "particular social group").

By testifying against a FARC leader in a civilian role, Sierra Granados essentially acted as a noncriminal informant for the government. The underlying purpose of his testimony was to have a warrant issued for Sanguino's arrest based on Sanguino's criminal conduct. Following our reasoning in *Castillo-Arias*, noncriminal informants against FARC do not constitute a particular social group under the INA. In *Castillo-Arias*, we held noncriminal informants working against the Cali drug cartel did not warrant an exception to the general rule that those, who engage in risks similar to those of the police or military, do not receive protection as a particular social group. 446 F.3d at 1198. We also determined such noncriminal informants did not constitute a particular social group, because there was no evidence the drug cartel would treat informants differently from any other person the cartel perceived to have interfered with its activities. *Id.* Noting that "virtually the entire population of Colombia is a potential subject of persecution by the cartel," we concluded the risk of persecution alone does not create a particular social group within the meaning of the INA. *Id.*

There is no evidence in this case FARC treats or would treat former military members who had testified as civilians against FARC differently from any other

11

person FARC perceived to have disrupted its activities.  Like the Cali drug cartel, the entire population of Colombia is a potential subject of persecution by FARC. This is evidenced by FARC's subornation and intimidation of judges, prosecutors, and witnesses; recruitment of child soldiers; violence against women; and attacks against teachers and trade unionists.  The BIA did not err in concluding Sierra Granados had not established a well-founded fear of persecution based on his membership in a particular social group.

Substantial evidence supports the BIA's finding that Sierra Granados's fear of persecution is not objectively reasonable.  *See Ruiz*, 440 F.3d at 1257.  FARC did not harm Sierra Granados or his family, when he lived in Colombia, and no evidence shows FARC is still looking for Sierra Granados or it has made additional threats on his life.  Although Sierra Granados's parents remain in Bogota, FARC has not contacted, threatened, or harmed them.  Moreover, FARC has taken no action against Sierra Granados's home in Bogota.  Because Sierra Granados has not met his burden of proof for asylum, we deny his petition for review.

**PETITION DISMISSED IN PART, DENIED IN PART.**